No. 45.—JOHN WOODRUFF, plaintiff in error, *vs.* JAMES WOODRUFF, defendant in error.

[1.] It is no error that the Court refuses to give requests in charge to the jury, if there is nothing in the evidence to authorize the requests.

[2.] A charge that cannot possibly operate *"against"* a party, cannot be made the ground for a new trial, even under the new trial Act of 1854.

[3.] In a suit for malicious prosecution, proof that the grand jury returned "no bill on the indictment, is sufficient proof *prima facie*, of the termination of the prosecution.

[4.] And in such a suit the plaintiff may examine the Solicitor General, as to whether the prosecution was renewed or not.

Malicious prosecution, in Fulton Superior Court. Tried before Judge HAMMOND, at October Term, 1856.

Woodruff vs. Woodruff.

This was an action for a malicious prosecution and false imprisonment, brought by James Woodruff against John Woodruff.

The defendant pleaded the general issue.

Plaintiff introduced the following testimony.

1st. The original affidavit and warrant charging plaintiff with an assault with intent to murder, with the entry of service thereon by a lawful officer.

2d. The original warrant of commitment under which plaintiff was imprisoned.

3d. The original recognizance for plaintiff's appearance at the Superior Court of DeKalb county, to answer said charge.

4th. A certified copy of the bill of indictment preferred against plaintiff for said offence at the April Term, 1853, of DeKalb Superior Court, with the entry of "no bill" thereon, signed by James Paden, foreman.

5th. *James Paden*, examined by commission.

First interrogatory : I know the parties.

Second : Was foreman of the grand jury of DeKalb county, at April Term, 1853, of the Superior Court. The annexed bill of indictment was the original bill and the entry of " no bill," signed James Paden, foreman, is in my own hand-writing.

Third : When the return " no bill" was made, the defendant was a witness before the grand jury on the part of the State, and then testified that he went to the house of plaintiff, and plaintiff was in the field. Plaintiff went to the house, went in at the door opposite from defendant, came out with a pistol or short gun, and told defendant not to come any further. Defendant continued to advance and plaintiff told him again not to come any nearer, for he had been the cause of his family leaving him, and he did not want him to come about him. Plaintiff held the pistol in his hand, but did not present it. Defendant then "told plaintiff he had come after settlement, or some clothes, or something to that amount.

Fourth: Knows nothing else that will benefit plaintiff.

Annexed to the answers of this witness, was the original bill of indictment preferred against James Woodruff, with the return thereon, of "no bill," signed by the witness as foreman of the grand jury of DeKalb county.

6th. *Allen Woodall*, examined by commission.

First interrogatory: Knows the parties.

Second: Knows that plaintiff was confined in the jail of DeKalb county in 1853, from 10th May to 21st June, charged with an assault with intent to murder, under a warrant issued at the instance of defendant. Witness was then the jailer of DeKalb county.

Third: Knows that plaintiff sent for defendant to come and see him, while in jail. Plaintiff applied to defendant to let him out of jail.

Defendant proposed to let him out, provided he, plaintiff, would leave the State.

Fourth: Knows nothing else that will benefit plaintiff.

7th. *John T. Sanders*, sworn, says: The defendant came to his house and asked him to go with him to plaintiff's house, that he had a mortgage on plaintiff's horse and wanted it settled.

Witness started on with defendant. On the road they met Mr. Embry, Embry told them not to go, that plaintiff was mad; urged them; said if they went, plaintiff would shoot defendant defendant replied, 'that there was no danger, and persuaded witness to go on; taht when they got there, plaintiff would not say a word; that he could take him by the hand and hickory-whip him. Witness and defendant then went on, and Mrs. Casey and plaintiff's wife then persuaded them not to go to plaintiff's, saying that plaintiff was very angry with defendant.

Defendant still insisted that witness should go with him, saying there was no danger. When they got within one hundred and fifty or two hundred yards of plaintiff's house, one of plaintifl's children ran to tell plaintiff, who went into the

house and got a pistol, and came out with it in his hand, arm down by his side, and hollowed to defendant to get out of his inclosure; not to come any nearer. Witness and defendant went on down the path towards the house, and where plaintiff was standing. When within twenty-five or thirty steps of plaintiff, who was standing in the edge of his yard, and in the path they were coming down; plaintiff raised the pistol, throwing the barrel in his left hand, and the pistol was pointed up the path in the direction of witness and defendant, and said, "John stop and get out of my inclosure, if you come another step I will blow a day-light hole through you;" witness then, as quick as lightning, put his hand on the shoulder of defendant and told him to stop, which he did; witness then went off a piece and sat down on a stump. After a while, plaintiff called him; witness went to him and they talked a good while. In the conversation, plaintiff said to defendant, "John, you are the cause of my wife and children leaving me;" defendant replied, "James, you know that is not so," that ended the conversation on that point. Witness then came back to defendant and told him that nothing could be done with plaintiff; defendant left with him. While there, and in going away, defendant was cool, and did not do or say anything out of the way. Defendant said to witness, that one motive he had in going to plaintiff's was to get him to let his wife and some of his children, who were then away, come home. Talked with him before they went on the road, and whilst there to plaintiff, as much about that as the mortgage. Plaintiff said he was willing to pay the mortgage. The pistol was a large rifle-bore, and at the time it was raised up and pointed down the path toward them, they were in carrying distance; thinks the pistol could shoot further than where they stood, and would kill.

8th. *L. E. Bleckley*, sworn: Has been Solicitor General of the Coweta Circuit since Nov. 1853; has attended every Superior Court in DeKalb since that time; has had no application to make out an indictment in the case which plaintiff

was arrested in; has no recollection of any indictment pending against plaintiff in that Court; feels confident there is none.

9th. *William Ezzard*, sworn: Was employed by plaintiff to defend him; thinks no order of discharge was taken upon the return of "No Bill," by the grand jury.

Plaintiff closed, and defendant introduced no testimony.

Counsel for defendant then requested the Court, in writing, to charge the jury, among other things, as follows:

1st. "That if the pistol was held in one hand or in both, the muzzle pointing down the path towards the defendant, the parties being near enough each other for a shot from the same to take effect; and if the plaintiff, while so pointing the pistol, threatened to shoot defendant if he did not stop, and defendant did stop and thereby prevented the shooting, then the assault was complete; and it was an assault with intent to murder, provided the killing of defendant, had it then and there taken place, would have been murder, and not a lower grade of homicide."

2d. "That such killing would have been murder, if provoked, merely by defendant being in the path inside of plaintiff's inclosure, and advancing towards the plaintiff's house, provided he was there with no intent to do an injury, and was making no hostile demonstration."

3d. "That if there was a mortgage or any other matter of business between the parties to be settled, defendant had a right to go to see plaintiff about it, at his own house or any where else in a peaceable manner, and to insist, in a respectful way, upon having a friendly talk with him on the subject."

4th. "That if the defendant was going peaceably to see the plaintiff on lawful business, was decent and orderly in his behavior, and was met by plaintiff with a deadly weapon, the weapon pointed down the path towards him within carrying distance, and if the plaintiff then threatened to shoot

him, or make day-light show through him if he went another step, and the defendant had to stop to keep from being shot, there was probable cause for the prosecution."

Each and all of which charges the Court refused to give, *in the language requested*, and counsel for defendant excepted.

But the Court charged the jury, among other things, that, "the finding of 'no bill' by the grand jury of DeKalb county, with the lapse of a reasonable time, and no attempt to prefer another bill of indictment, would be sufficient to show *prima facie* that the case in which the arrest was made had ended, although a recognizance for plaintiff's appearance to answer the charge, might be still outstanding, and no order of Court had been granted for his discharge." To which charge and every part thereof, counsel for defendant excepted.

The jury found for the plaintiff, five hundred dollars; and counsel for defendant moved for a new trial, on the ground that the Court erred in refusing to charge the jury according to each of the several requests hereinbefore mentioned; on the ground that the Court erred in charging the jury as above specified; on the ground that the verdict was decidedly and strongly against the weight of evidence; and on the further ground that the Court erred in admitting the evidence of L. E. Bleckley and William Ezzard against the objection of defendant's counsel, said counsel having in fact objected to said evidence, and every part thereof, as irrelevant, and as proving by parol what could be shown by the records of DeKalb Superior Court, at the time said evidence was offered and admitted. The Court overruled the motion for a new trial, and counsel for defendant excepted.

OVERBY & BLECKLEY, for plaintiff in error.

CALHOUN & GARTRELL, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Ought the Court below to have given the *requests* in charge to the jury.

If the evidence proved there was *no assault*, the requests were merely irrelevant. And we think that the evidence did prove that there was no assault.

This was the evidence :

1st. The testimony of Paden, the foreman of the grand jury, to the effect, that the prosecutor, on his examination before the grand jury, swore that the accused "held the pistol in his hand, but did not present it."

2d. The testimony of Sanders, who swore, that when he and the prosecutor got "within twenty-five or thirty steps of" the accused, "who was standing in the edge of his yard, and in the path they were coming down," the accused "raised the pistol, throwing the barrel into his left hand, and the pistol was pointed up the path in the direction of" him, the witness, and the defendant, "and said, John, stop, and get out of my inclosure, if you come another step, I will blow a day-light hole through you."

Does the act thus sworn to, amount to the *presenting* of a pistol? A pistol, or other gun, is not presented at an object until it comes to be held as it would be held, if the holder of it was going *to fire it at the object.* Now a pistol, with its butt in the right hand, and its barrel thrown across into the left, is not held as it would be held, if the holder of it were going to fire it at an object; and this even although the pistol may happen to be pointing at the object. A pistol thus held, is no more held as it would be, if the holder were going to fire it at an object, than is a pistol thrown over the shoulder, with the muzzle to the rear, held as it would be held, if the holder were going to fire it at an object. It can make no difference in either case, that the pistol may happen to be pointing at the object. To constitute the act of present-

ing, *intention* must enter into the act.    And in such case, intention does not enter into the act.

The evidence shows then, that there was not any presenting of the pistol; and if there was not any presenting of the pistol, it follows that there could have been no assault.

If there was no assault there was nothing to authorize the requests, and they were irrelevant.    They went on the assumption that there was an assault.

[1.] We think, therefore, that the Court did not err in refusing to give them in charge to the jury.

This disposes of the requests to charge.

And what thus disposes of the requests to charge, must equally dispose of all the charges except one.

If the case, made by the evidence, was a case in which there was no assault, it was a case in which the defendant, the party alleging an assault, was not entitled to have any charge whatever given as to what might or might not constitute an assault.    If the case proved was this, it was plainly one in which the *whole* defence had failed.    And can any charge whatever given about a defence, be said to be "against" the defendant, when the whole defence has failed in the proof?    Suppose no proof at all is offered in support of the defence, does the Court do anything that operates "against" the defendant, if it tells the jury that such or such things would constitute a defence, but that such or such other things would not constitute a defence?    Surely not.

Still more must this be true, if evidence is introduced, and it actually *disproves* the defence.    And in the present case evidence was introduced, and it did disprove the defence.

The charges, all except one, amounted to this, that certain facts, if they existed, would constitute a defence, provided certain other facts did not also exist.

The case, as proved, was one in which there was no assault, and therefore, was one in which there could exist no facts that would constitute a defence.

The charge, therefore, confined as it was to what was

or was not a defence, could not possibly be "against" the defendant.

[2.] Without expressing any opinion then, as to whether the charges would or would not have been good, if they had been called for by the case proved, we say, that as they were not called for by the case proved, we ' do not consider them to have been *"against"* the defendant, in the sense of the word *against* as used in the new trial Act of 1854; and consequently, that we do not consider them to be such that, on this account, that act requires a new-trial to be granted.

The excepted charge is as follows: "That the finding of no bill by the grand jury of DeKalb, with the lapse of a reasonable time, and no attempt to prefer another bill of indictment, would be sufficient to show, *prima facie*, that the case in which the arrest was made had ended, although a recognizance for plaintiff's appearance to answer the charge might be still outstanding, and no order of Court had ever been granted for his discharge.

[3.] We think that this charge was right.

Suppose the accused had been discharged from the recognizance; yet such a discharge would not have been a bar to a new bill of indictment; that is to say the discharge from the recognizance would have been no better evidence that the suit had terminated, than was the mere return of " no bill" by the grand jury. At at any rate, that return was sufficient *prima facie*, *Pain vs. Porter*, *Cro. Jac.* 490 ; *Morgan vs. Hughes;* 2, *T. R*, 225 ; *Vol.* 2, *Pt.* 1, *Saund. Plead. and Ev.* 325 ; *See* 2. *Green. Ev. Sec.* 451.

The plaintiff, in the suit below, wished to prove that the prosecution had not been renewed. And the Court permitted him to examine the Solicitor General, to show that he had no knowledge of any renewal of the prosecution. We cannot say, that we think this permission to have been wrong.

What the plaintiff had to prove was a negative, and it is impossible that a negative, i. e. a non-existence, can be *record-*

*ed.* If so, it is not a thing of which any record can be direct evidence, much less can be the highest evidence.

[4.] We cannot say, therefore, that we think that there could have been offered any evidence of a better or higher *species* than that of the Solicitor General, which was offered.

Was the verdict decidedly and strongly against the weight of the evidence? We think not.

And this makes an end of all the questions in the case. The result is, that we think the judgment of the Court below ought to be affirmed.

Judgment affirmed