## CONLEY *v.* THE STATE.

1. There was no former jeopardy operating as a bar to a prosecution for fraudulently selling mortgaged property, where the defendant was tried for the same offence under an accusation which was fatally defective in not laying the venue and which was not amendable, and where the conviction under such void accusation could have been set aside on a motion in arrest of judgment.

2. The offence in the sale and disposition of the mortgaged property having been committed since the passage of the act of October 13, 1887, the offender was amenable to that act, though the mortgage was made to hold harmless his surety on bail-bond before that date.

3. It is not an excessive fine to require the perpetrator of fraud to pay double the amount of the debt sought to be evaded by the fraudulent act.

4. If the defendant reside in the county where the offence was committed, the "proper court" of that county which has jurisdiction, though a city court, is where the defendant can be tried.

5. The original mortgage made by the defendant to hold harmless his surety, having been duly probated and admitted to record, would have been admissible in evidence without proof of its execution; and its loss having been sufficiently proved, an exemplified copy was admissible. Nor was the substitution of the word "of" in the mortgage set out in the accusation, for the word "to" in the certified copy, a material variance.

6. That the surety to whom the mortgage was made was allowed to testify that he signed a replevy bond, was not error; the mortgage to him recited this fact.

7. It appearing that the defendant gave the mortgage to hold harm-

less his surety on bail-bond in an action of trover for the property covered by the mortgage, it was not error to admit in evidence exemplified copies of the executions issued in the trover suit and upon the foreclosure of the mortgage, together with claims and bonds filed to the levy thereof by the defendant's brother; and it appearing that the original claims and bonds were in defendant's handwriting, they also were admissible, though they were records of the superior court of the same county.

8. There was no fatal variance between the judgment alleged in the accusation, which was for a certain amount and costs, and the judgment shown by the evidence, which made no mention of costs; the execution for costs having issued additionally, and being, in effect, a part of the judgment.

9. It was competent for the mortgagee to testify how much he had paid upon the debt upon which he became surety for the defendant.

10. Certain conversations between the defendant and the mortgagee relative to the mortgaged property were not objectionable as evidence.

11. The words "or otherwise dispose of," in the first section of the act of December 13, 1871, entitled "an act to make penal the selling of personal property which has been mortgaged as a security for the payment of a debt," etc., must be construed to mean a disposition of the property in the nature of a sale and not in any other manner, and they are included in the term "selling" in the title of the act.

(a) It appearing that the defendant disposed of the property and recognized such disposition, and it being inferable from the evidence that such disposition was a sale of it, it was not material error for the court to charge that the State was not bound to show an actual sale, the statute making it penal to sell or otherwise dispose of the property, and the accusation charging that the defendant "did sell and dispose of" the same.

12. The mortgage given by defendant to hold harmless his surety in the bail-bond, made it a violation of the law upon which the accusation was founded for defendant to sell and dispose of the mortgaged property after the rendition of the judgment against him and his surety in the trover suit, and after the surety had actually paid a portion of that debt, and after he foreclosed the mortgage and had execution issued.

13. The charge as a whole is not erroneous.

14. The laws upon which the prosecution was founded are not unconstitutional for any reason.

15. There is sufficient evidence to support the verdict.

April 25, 1890.

Selling mortgaged property. Former jeopardy. Con-

stitutional law. Criminal law. Statutes. Principal and surety. Punishment. Jurisdiction. City courts. Evidence. Practice. Judgments. Charge of court. Verdict. Before Judge VAN EPPS. City court of Atlanta. December term, 1889.

On November 7, 1888, an accusation of M. E. Maher against John L. Conley was filed in the city court of Atlanta, charging that after having executed to Maher a mortgage-deed to certain personal property (setting forth a copy of the mortgage-deed), he did, on May 10, 1888, sell and dispose of a portion of that property to the Plowboy Company, a corporation, with intent to defraud the mortgagee, without obtaining his consent, and without paying the indebtedness the mortgage was given to secure ; whereby the mortgagee sustained loss, in that in December, 1887, judgment for $5,952.22 having gone against Conley and his sureties in the case specified in the mortgage, Maher, as security, on May 29, 1888, paid on the same $3,074.49, and A. E. Buck, one of the other sureties named therein, on June 16, 1888, paid $2,966.57, said sureties never having been reimbursed by Conley, and being unable, without serious delay and litigation, to subject any of the property of Conley, he having no visible effects. The mortgage was between Conley of the first part, and Maher of the second part, dated August 2, 1883, and for the consideration of one dollar and others hereinafter stated, the party of the first part hereby sells and conveys to the party of the second part certain personalty consisting of printing-press and material, safe, engine, etc., upon the following condition : The party of the first part having been sued in trover for the recovery of certain personal property by M. E. Thornton, and having been required to give a bond of $20,000 in said suit, and Maher being one of the sureties thereon : if the party of the first part shall save harmless the party of

the second part by reason of said suretyship, this bill of sale shall become void; but if a judgment be had against the party of the first part, then the party of the second part may take possession of the property for the benefit and security of himself and the co-sureties on the bond, and deliver the same into court, and for that purpose the party of the first part will hold the property as the agent of the party of the second part until the final hearing of said suit in trover.

Conley was arraigned, and he pleaded and was tried upon this accusation; but during the argument of counsel, upon discovery that the accusation failed to allege the venue of the offence, it was allowed to be amended, over Conley's objection, so as to charge that the same was committed in Fulton county. For this error the judgment of the city court denying a motion in arrest of judgment after verdict of guilty, was reversed at the last term of the Supreme Court. 83 *Ga.* 496.

On November 9, 1889, another accusation to the same effect was filed, charging the offence to have been committed in Fulton county, and that the judgment entered in December, 1887, against Conley and his sureties, was for $5,714.62 and costs which were afterwards entered up as amounting to $237.60, making the total of $5,952.22 (which was the amount stated in the first accusation).

The defendant pleaded former jeopardy, averring that by the amendment made to the first accusation, the same was withdrawn from the jury and a new one submitted to them on which they had not been sworn and to which he had not been called upon to plead, and that they have not yet passed upon the same; wherefore he was fully acquitted and discharged, and cannot now be put on trial under another accusation for the same offence of which he was acquitted by the illegal

act of the court in allowing the amendment. This plea was stricken on demurrer.

All the evidence was introduced by the State, and it tended to show the following : Conley induced Maher to sign the bond in the trover suit, representing that it was a justice court bond. It was accepted because Maher's name was on it. He took the mortgage from Conley to secure himself from loss, and had it recorded. On December 15, 1887, a verdict and judgment were rendered in favor of Thornton against Conley and the sureties on his bond, two of whom were Maher and Buck, for $5 714.62.    Execution issued for that sum with $237.60 costs; and on May 7, 1888, the sheriff, after making an entry thereon of no property of Conley to be found, levied it on real estate of Maher, who, on the 28th of the same month paid to Thornton's attorneys $3,076.49, and their acknowledgment of receipt was entered on the execution. On the 16th of the following month, Buck paid $2,966.57, in satisfaction of his liability, principal, interest and costs. Maher has never been reimbursed. He saw the defendant several times and tried to get him to settle, but could not do so. On May 13, 1888, he received from Conley a letter stating that he would not be able to do anything; and that the only chance he saw was, to " stand those fellows off" in some way until he could make some reasonable settlement with them; otherwise he feared Maher would suffer loss, as he had nothing on earth to indemnify him. Maher then went again to East Point and saw Conley in the Plowboy office ; and after again vainly trying to get satisfaction of him, asked where the property was that he had the mortgage on, to which Conley replied, " It is all here," waving his hand. He seemed to be in charge of the office. Maher asked him what he proposed to do about the bond, stating that his (Maher's) property was advertised for

sale, and that he had to pay the bond, and he wanted to know what arrangement Conley was going to make about it. Conley said he couldn't do anything about it; that he " didn't have nothing." Maher said, "Why don't you get your wife to raise this money for you? The difference between my wife and your wife was, that my wife told me to sell everything and pay this, and your wife won't help you out at all." Conley said, " Hush, don't talk so loud; she is up stairs. Maher said, " I don't care if she is; I want her to hear it. I will send and get the property.". Conley said, " All right, send and get it." Maher said, " Where is it at?" and Conley replied, waving his hand around the building, " It is all here, except some press." Subsequently Maher had the *fi. fa.* issued upon the foreclosure of his mortgage levied on an engine, printing material, etc., and a claim was interposed by the Plowboy Company, by its president Morris J. Conley, who, with Sarah H. Conley and one more, signed the necessary bonds as securities. The claims were in the same handwriting as Conley's signature to the letter to Maher, who testified that defendant acknowledged that they were in his handwriting; also that he said that if he did transfer the property to his wife, he did it to satisfy a prior lien. Printing material used by Thornton in publishing the Post-Appeal newspaper, and afterwards used on the Evening Journal, was carried by Conley to East Point and there used in publishing the Plowboy. It was pretty badly worn and not of much value. He told the levying officer that the property levied on was that of the Plowboy Company, and that he had no interest in it. The Plowboy Company was chartered on April 25, 1885, upon the petition of Samuel Hape, Morris J. Conley, W. O. Charlton and John L. Conley, for the purpose of carrying on a general printing business, etc. Defendant organized the company and managed

the business. Hape had no stock or interest in the company, and simply allowed his name to be used, at defendant's request.

In his statement the defendant said that the property he was charged with selling was the property involved in the trover suit; that part of it (a printing-press) was sold by the sheriff under a mortgage which had been given by Thornton, and was taken away in February, 1887; another part (an engine) was loaned to Maher and remained where he or his son put it and had never been touched, and the balance of the property was used on the Atlanta Journal for a long time, and in one way and another it went to nothing, and what little of it was left was moved to East Point in 1884, but it never was in the building where stood the property which "was levied on under these claims"; that the property in that building was purchased from various persons (naming the articles and stating the names of the persons), and in that building there never was a particle of property that was in the Post-Appeal office; that there was some old stuff at East Point, not in that building, which defendant told Maher he could have if he wanted it; that he had never asked for it, but instead had " sent down there and levied on property that never was in that building "; and that defendant had never been asked to deliver to anybody any property, nor to point out any, was not there when either of the levies were made, and never made any representations to Maher when the bond was signed. The jury found him guilty; and he was sentenced to pay a fine of $6,152.98 or be confined in the county chain-gang for twelve months, with the privilege to pay the fine and be discharged at any time. He moved in arrest of judgment on the following grounds (which were also grounds of a demurrer to the accusation) :

(1) The accusation charges no offence known to the

law; the mortgage-deed set out therein showing on its face that it was executed to indemnify a surety against loss in an action *ex delicto*, and not to secure the payment of a debt; and "said accusation alleging that no debt existed between the parties to said mortgage for more than four years after the date thereof." (2) The act of October 8, 1887, conferring jurisdiction on the city court of Atlanta to try offences against section 4600 of the code, and the acts amendatory thereof, are unconstitutional; and there is in law no such offence as the accusation sets forth. (3) Section 4600 of the code, and the act of October 13, 1887, amendatory thereof, are unconstitutional in that they impose excessive fines; the fine imposed in this case being according to the alleged indebtedness of the defendant, and not according to his fault. (4) Said acts are unconstitutional, in that they provide for imprisonment for debt. (5) There is no law making penal the selling of personal property covered by a mortgage executed to indemnify a surety against loss, there being no debt existing between the mortgagee and the mortgagor at the time of the execution of the mortgage.

This motion was overruled; and the defendant afterwards moved for a new trial on the grounds stated in the opinion. Other grounds set out portions of the judge's charge as erroneous; and others assigned error upon his refusal to charge, upon requests, as follows:

Unless it appears from the evidence that at the time of the execution of the mortgage set out in the accusation, if it was executed, the defendant was indebted to Maher, to whom it is claimed the mortgage was given, and that the mortgage was given to secure an existing indebtedness, it would be your duty to acquit the defendant. Before you would be authorized to convict the defendant, it must appear to your satisfaction, from the evidence and beyond a reasonable

doubt, that a judgment was rendered against him in the trover suit mentioned in the accusation for the amount stated, and that Maher paid on said judgment the sum stated in the accusation, and that A. E. Buck also paid on said judgment the sum stated in the accusation, and that neither Maher nor Buck have been reimbursed by the defendant. It is incumbent upon the State to prove to your satisfaction and beyond a reasonable doubt the allegations of the accusation. If you believe from the evidence that the defendant disposed of the property set out in the mortgage he gave to Maher, if he did, was disposed of as charged in the accusation, the proof would have to go further and show that not only was the property disposed of without the consent of Maher, but also without the consent of Buck, as charged in the accusation, and with the intent to defraud said mortgagees; and unless this has been proved to your satisfaction by the State, it would be your duty to acquit the defendant."

The judge's charge, after setting forth the substance of the accusation, proceeded thus:

"To this charge, the defendant standing mute, a plea of the general issue—of not guilty—was entered by order of the court. This plea puts in issue every material allegation in the accusation. The effect of the plea is to put the burden on the State of establishing the truth of those allegations beyond a reasonable doubt. In the view which the court takes of the case, the fact that Buck was also a surety (if he was), and that judgment was against him also, and that he paid a part, has nothing to do with the guilt or innocence of Conley; Buck not having been named as one of the mortgagees in the alleged mortgage, nor a party thereto, said instrument purporting only to be between Conley and Maher." Here the judge read section 4600 of the code, and proceeded: "You will observe that the essential ingredients of this crime, as defined in the statute, are as follows: it must appear that the defendant executed a mortgage to personal property to secure the payment

of the indebtedness, as charged; that after executing and delivering it, he sold or otherwise disposed of the mortgaged property or some part thereof; that this was with the intent to defraud the mortgagee; that this was done before paying the indebtedness for which the mortgage deed was executed; and that loss was thereby sustained by the holder of the mortgage; and finally, that this was done without the consent of the mortgagee being first obtained. All of these facts are material, and the burden of establishing each and every one of them to your satisfaction beyond a reasonable doubt is upon the State. Whether or not the defendant executed and delivered the original of the writing set out in the accusation to M. E. Maher, is for you to find from the evidence. The duty of construing that writing is upon the court. The court charges you that said writing is a mortgage within the meaning of the law. It creates a lien upon the property mentioned in it to secure the payment of a contingent indebtedness, that is, to indemnify the surety named in it, or hold him harmless in case he sustains loss by reason of his contract of suretyship; and as such, this instrument is as fully within the law as if given to pay an actual indebtedness then existing and ascertained between the parties. And in this case, if you believe from the evidence that the defendant executed and delivered to Maher the mortgage in question to indemnify Maher or hold him harmless from loss by reason of Maher having, as Conley's surety, signed a bond in a trover suit of one M. E. Thornton against Conley and Maher, and that Maher sustained a loss therein by having to pay any part of this judgment, and that after this mortgage was executed in Fulton county on the 10th day of May, 1888, or on any other day within two years prior to the making of the affidavit on which the accusation is predicated, the defendant sold or otherwise disposed of the personal property specified in the mortgage, or any part of it, to the Plowboy Company with intent to defraud Maher, and that this was done before paying Maher the indebtedness for which the mortgage was executed, that is to say, the liability which Maher incurred as surety aforesaid, and without Maher's consent being first obtained, and that loss was sustained by

Maher, and you believe all these facts beyond a reasonable doubt, you would be authorized to find the defendant guilty. If any of these material facts are not established to your satisfaction, or if you entertain a reasonable doubt as to the truth of any one of them, you would give the benefit of the doubt to the defendant and acquit him. The State is not bound to show an actual sale; and while a mere delivery of property by a debtor to another for custody or temporary use not inconsistent with the mortgage or the rights of a mortgage creditor, would not be within the statute, any other disposal of it would which was accompanied by actual delivery to a third person, and coupled with any sort of claim of right or title created in such person by the act of the mortgagor, which would make it necessary for the mortgagee to incur expense to follow the property or discover and subject it in consequence of a fraudulent sale or a fraudulent disposition. The law inhibits a debtor by his own voluntary act, after having mortgaged personal property, from creating a right or claim of interest in another which has the effect to delay and hinder his creditor, and put him to expense and trouble and loss in asserting his mortgage lien in a contest with such third person. A debtor, having mortgaged personal property to secure a debt, cannot thereafter create by his own act an interest in a third person, and authorize such third person to put in a claim of ownership to such property and aid him in the assertion of such title, and thereby hinder, delay or obstruct the mortgage creditor, and subject him to trouble and expense in his effort to enforce his mortgage lien. To do so is criminal under our law. The burden is on the State to show a sale or other disposition of the mortgaged property or some part thereof, either on the date alleged, or within two years next before the date of the charge. The State may show this or any other fact in issue, if it can either by direct or circumstantial evidence; but unless the State has done so to your satisfaction and beyond a reasonable doubt, the failure must result in a verdict of not guilty. Now the weight of the evidence and the credibility of witnesses is with you. It is your province not only to find what facts have been established by the direct testimony of wit-

nesses, but you are authorized to draw reasonable inferences and deductions and to find conclusions going beyond the letter of the testimony of any witness, provided they are, in your opinion, rational and reasonable, and authorized by other facts and circumstances in evidence. In so far as the guilt of the defendant depends on circumstantial evidence alone, the rule is that each separate fact or link which goes to make up the chain of circumstances from which the deduction of guilt is sought to be drawn, must be clearly proved, and a fact not clearly proved should not be considered as a part of the chain of circumstances, and should be rejected by the jury; and the circumstances proved must not only be consistent with the defendant's guilt, but they must exclude every other reasonable hypothesis than that of his guilt. Now if any one or more of the circumstances relied on by the State are not clearly proved, and for this reason you reject one or more of the circumstances relied on, then you will inquire whether the remaining circumstances proved (if they are clearly proved) are consistent with the defendant's guilt, and inconsistent with any other reasonable hypothesis than that of his guilt. All essential facts and circumstances necessary to show the commission of the crime, and to connect the defendant therewith as the party committing it, must be proved. In all criminal cases the defendant's guilt must be established beyond a reasonable doubt. The doubt must be pertinent to the matter in issue. It must arise out of the evidence, or for a want of sufficient evidence. Juries in their judgment in criminal cases occupy the same position as other searchers after truth, with but one exception: the presumption is in favor of innocence, and the guilt of the defendant must not be doubtful; but the rules of belief and the grounds of confidence are the same as in other cases, and the principles of common sense are just as controlling as in other cases. If, after you have examined all the evidence in this case, your minds are unsatisfied, unsettled, wavering, and you cannot as honest men come to a conclusion beyond a reasonable doubt of the defendant's guilt, then you ought to acquit him; but if the evidence shows beyond a reasonable doubt that the defendant is guilty, it is your duty to convict him. The defendant

in this case has made a statement in the hearing of the court and the jury. The statement is not under oath; it is entitled to just such force and effect as you see proper to give it. The statute declares that you may, if you see proper to do so, believe the statement in preference to the sworn testimony in the case. You may believe the statement in whole or in part; you may reject it in whole or in part; you may believe it in preference to the sworn testimony in the case, or you may disregard it altogether. The language of the law is, that the jury may do either the one or the other of these things; not that you must do it."

D. P. Hill and R. J. Jordan, for plaintiff in error.

F. M. O'Bryan, solicitor, and Arnold & Arnold, for the State.

Blandford, Justice.

1. The first error alleged is that the court upon demurrer overruled the defendant's plea in bar, which was that he had before been put in jeopardy for the same offence. The following appears from the record: Upon the former trial the accusation did not charge the offence to have been committed in the county of Fulton, and after the defendant had been put on trial under this accusation, the jury sworn, testimony submitted and argument of counsel in part made, the court, over objection of the defendant, allowed the accusation to be amended so as to charge that the offence was committed in the county of Fulton. The defendant was convicted and brought the case to this court, and it was decided that the court committed error in allowing the amendment to the accusation to be made, and upon that ground reversed the judgment of the court below. *Conley* v. *State*, 83 *Ga.* 496. The constitution of this State (Code, §5000) provides that "no person shall be put in jeopardy of life or liberty more than once for the same offence, save on his or her own motion for a new trial after conviction, or in case of mistrial."

There is no jeopardy if the indictment on the former trial is so defective as to be good cause for arresting the judgment. 1 Bishop Criminal Law, §1021 ; Wharton (2d ed.),213, 205; Cooley Const. Lim. *327; *Jones* v. *State*, 55 *Ga.* 625 ; *Reynolds* v. *State*, 3 *Ga.* 53 ; Morrisette *v.* State, 77 Ala. 71. If for any reason the former proceeding is void, and so declared on motion of the accused for a new trial, it is no bar to a subsequent prosecution for the same act. Such proceeding necessarily involves the conclusion that he was not in jeopardy, and it is no bar to subsequent prosecution. So we think there was no error in the ruling of the court below on this point.

2. The next ground of error alleged is that the verdict was contrary to law, in that the acts of 1887, under which the defendant was tried, were as to him *ex post facto*, not being of force at the time of the commission of the offence. The act of 1871 (Code, §§4600, 4601, 4601a) made the fine double the amount of the debt; and for failure to pay immediately, imprisonment not less than six nor more than twelve months in the county jail. The act of 1875 (p. 2) extended these sections to liens for rent, etc. The act of 1876 (p. 114) punished offences against the act of 1875 according to section 4310 of the code. §4600(a). The act of Oct. 8th, 1887 (p. 37), amended section 4601(a) by striking the words "superior court," which made the section read as follows : "The proper court held for the county in which the party violating section 4600 resides shall have jurisdiction to try the offender." The act of Oct. 13th, 1887 (pp. 37, 38), amended section 4600 as it originally appeared, so as make it read as it did before the act of 1875 ; and the punishment for not paying the fine immediately was changed to confinement in the chaingang or the county jail for a period not more than twelve months. The evidence shows that Conley sold and

disposed of the property which is alleged to have been mortgaged, after the passage of the act of October 13th, 1887, above referred to, and that prior to such sale a judgment had been rendered against him and Maher, his surety on the bail-bond, for a sum over $3,000, there being another surety, one Buck. We think that while Maher may have stood Conley's surety before the passage of the act of October 13th, 1887, yet the offence, if any, committed by Conley in the sale and disposition of the property mortgaged by him to Maher to save Maher harmless as surety on his bond, having been committed by Conley since the passage of the last mentioned act, rendered him amenable to that act.

3. It is insisted that the code, §4600, is unconstitutional, because it imposes an excessive fine (the fine in this case being $6,152.98). No discretion is left by the statute to the judge; it is an invariable law, and fixes the amount of the fine at double the mortgage debt; and it pays no regard to the circumstances of the case, the manner of fault or the ability of the party to pay. It is said that it is violative of that section of the constitution which says that excessive fines shall not be imposed. Code, §5001. The constitution (Code, §5023) expressly confers on the legislature power to provide for the punishment of fraud, and there is certainly nothing excessive in requiring the perpetrator of fraud to pay two dollars for one—that is, double the amount of the debt sought to be evaded by the fraudulent act. Such a measure of forfeiture or penalty would not be unreasonable for recovery in a civil action, were such an action given by statute.

4. It is further insisted that the act of October 8th, 1887, is unconstitutional, because it gives jurisdiction to the "proper court" held for the county in which the offender resides. It is true that if the offender should not reside in the county where the "proper court" is

given jurisdiction, then such court would not by force of the act itself have jurisdiction; but if he should reside in such county and the offence is also committed there, then the "proper court," though it be the city court, which has jurisdiction, would be a court in which the offender could be tried.

5. It is alleged as error that the court admitted in evidence an exemplified copy of the mortgage made by Conley to Maher to secure and indemnify him against loss as surety for Conley; because there was no proof of the execution of the original, and because there was a material variance between the paper offered and admitted and the mortgage set out in the accusation. We do not think this exception is well-founded. There was no need of any proof of the execution of the original mortgage, because the paper offered in evidence was an exemplified copy of a mortgage which had been admitted to record, and upon proper probate. The original mortgage itself, if it had been offered in evidence, having been recorded, would have been admissible under the laws of this State, because the same had been duly probated and admitted to record; and we think the loss of the original mortgage was sufficiently proved to admit this secondary evidence. We think there was no material variance between the mortgage set out in the accusation and the paper offered and admitted.

6. It is alleged as error that the court allowed Maher to testify that he had signed a bond, a replevy bond, the bond alleged to have been given in a trover suit. The court, in a note to this ground, certified that he allowed this evidence to go to the jury because the mortgage given by Conley to Maher recited the bond, and if he executed the mortgage he was estopped from denying its recitals. We think there was no error in allowing this testimony.

7. It is contended that the court erred in admitting a certain exemplification of the execution and claim papers from Fulton superior court, because it was not under the seal of the court; and that the court erred in admitting the original execution and claim papers. The testimony shows that these original claim papers were in the handwriting of Conley, the defendant, and that the claim was put in by his brother, who claimed the property levied on as his, and that it had been the property of a certain newspaper called the "Post-Appeal," for recovery of the possession of which the action of trover was brought by Thornton, and in which case the bond was given by Conley with Maher as security; that the mortgage made by Conley to Maher to secure and save him harmless as such surety was upon this property, and it was the same property sold and disposed of by Conley. Under these facts, we think the evidence was admissible. See also Code, §3816. No seal required: 80 *Ga.* 507.

8. We do not think there was a fatal variance between the judgment alleged ($5,714.62 and costs), and that admitted ($5,714.62). The *fi. fa.* issued in addition to the judgment for so much as costs. The costs followed the judgment, and the clerk could well have taxed the costs and issued execution for the same. It was in effect a part of the judgment.

9. It is alleged that the court erred in not ruling out Maher's testimony relative to the alleged payment by him on the Thornton *fi. fa.* We think there was no error in allowing this testimony. It was perfectly competent for Maher to testify how much he had paid upon this debt upon which he had become surety for Conley, from whom he had taken the mortgage to secure and save himself harmless.

10. It is complained that the court erred in admitting a certain conversation of Maher with the defend-

ant; that some of Maher's statements were calculated to injure the defendant, and out of them arose nothing that could be used as a confession. We think this is a conclusion of the plaintiff in error not warranted by the facts, and that there was no error in admitting the evidence.

11. It is alleged as error that the court charged the jury that the State was not bound to show an actual sale, as the statute makes it penal to sell *or otherwise dispose of* the property, and as the accusation charges that the defendant did sell and dispose of to the Plowboy Company. We see no material error in this charge. The act of December 13th, 1871, entitled "An act to make penal the selling of personal property which has been mortgaged as a security for the payment of debt, and to provide for the punishment of the same," provides, in the first section thereof, that "no person, after having executed a mortgage-deed to personal property, shall be permitted to sell *or otherwise dispose of* the same with intent to defraud the mortgagee." Acts 1871-2, p. 71. If the words "or otherwise dispose of the same" are matter different from that expressed in the title of the act, in that they have no reference to the "selling" of property, the act is in this respect unconstitutional, and this charge erroneous; but we think these words "or otherwise dispose of" must be construed to mean a disposition of the property *in the nature of a sale*, and not in any other manner; and that they are included in and in effect the same as the "selling" mentioned in the title of the act. Endlich Interp. Stat. §59; Truss *v.* State, 13 Lea (Tenn.), 311. We therefore think there was no material error in this part of the charge, the evidence showing that the property was disposed of by the accused to the Plowboy Company, a corporation; that he recognized such disposition; and that the same, as may be inferred from the evi-

dence, was a selling of mortgaged property within the meaning of the title of the act. Code, §4600.

12. It is alleged as error that the court charged the jury that a mortgage given to indemnify bail in an action *ex delicto* was a mortgage executed to secure the payment of an indebtedness. It is insisted that a mortgage given to secure the payment of a debt is one thing, and that a mortgage given to indemnify a surety against loss is another and very different thing, and is not such a writing as contemplated by the statute, and not embraced within its terms. Section 2164 of the code provides that "if the principal executes any mortgage or gives other security to the surety or indorser to indemnify him against loss by reason of his suretyship, the surety or indorser may proceed to foreclose such mortgage, or enforce such other lien or security as soon as judgment shall be rendered against him on his contract." Under this section, we think that when the judgment was rendered against Conley and Maher, his surety, it became a debt within the meaning of the statute which provides for the giving of a mortgage to secure an indebtedness. And where the evidence shows not only that such judgment had been rendered against Conley and his surety, Maher, but that Maher had actually paid the debt or a portion of it for which he had become surety, and where he afterwards foreclosed this mortgage as against Conley, and had execution issued thereon, before any sale or disposition of the property by Conley, we think that when Conley thereafter sold and disposed of the property, he violated section 4600 of the code, under which he was indicted. Such being the case, there was no error in ruling as the court did and refusing to charge as requested.

13. We have examined the charge as a whole, and we find no error therein. We think it was a fair charge as to the law upon the facts of the case.

14. We think the court committed no error in refusing to sustain the demurrer to the accusation and the motion to arrest judgment, which is embraced substantially in the same ground. The laws upon which the prosecution was brought are not only not unconstitutional for the reason specified, but for any other reason.

15. It is insisted that the verdict is contrary to the evidence and without evidence to support it. We have carefully examined the evidence, and are satisfied that there is sufficient evidence to support the verdict.

We think, therefore, that the court committed no error in refusing to grant a new trial.

*Judgment affirmed.*