## HORN *v.* SIMS.

1. A declaration for malicious prosecution stating that the grand jury had made a return of " no bill " upon a bill of indictment, and "expressed" in their finding that the prosecution was malicious, sufficiently alleged that the prosecution had ended. *Woodruff* v. *Woodruff*, 22 *Ga.* 237.

2. In a suit for malicious prosecution, a plea to the effect that the defendant, without any malice whatever, consented to become prosecutor as a matter of friendship to another, and upon the assurance of the solicitor-general that so doing was " only a matter of form," is not a plea of justification, and does not entitle the defendant to the opening and conclusion.

3. The evidence fully warranted the verdict; and there was no error in refusing a new trial.    *Judgment affirmed.*
   April 17, 1893    Argued at the last term.

Action for damages. Before Judge HANSELL. Brooks superior court. May term, 1892.

Sims sued Horn for malicious arrest and prosecution. The jury found for the plaintiff $50. The defendant's motion for a new trial was overruled, and he excepted. The grounds of the motion are, that the court erred in not dismissing the case on defendant's motion, the dec-

laration failing to set forth a cause of action, and not stating that the prosecution had ended; that the court erred in holding that the plea was not a plea of justification, and refused the defendant the right to open and conclude; and that the verdict was contrary to law and evidence.

The declaration alleges, that Horn preferred a bill of indictment against Sims, charging him with the larceny of a hog, which indictment was not found true by the grand jury who, upon returning "no bill," expressed that the prosecution was malicious; that Horn was the prosecutor, and his name was so indorsed on the indictment; that the allegations therein were absolutely false; and that said criminal prosecution was maliciously carried on by Horn and without any probable cause. The plea was as follows: A possessory warrant was issued by a justice of the peace at the instance of one Bell for the plaintiff and a hog of Bell. Sims was arrested by a constable and carried before the justice, and then and there gave up the possession of the hog and paid the cost of the warrant, and thus the matter was dropped; with all of which proceedings Horn had no connection whatever. Afterwards Bell approached Horn and said he wanted to put the matter of Sims stealing his hog before the grand jury, and Horn told him to go to the solicitor-general with the same. Bell replied he did not know the solicitor-general, and asked Horn to go and show him, which Horn did, and helped Bell explain the case to the solicitor-general; after which the solicitor-general said he would write the bill and send it before the grand jury, that it was a plain case; and asked Horn to allow his name to go on it as prosecutor. Horn at first objected, but finally consented at the solicitation of the solicitor-general and Bell, who said it was only a matter of form. Horn denies that the case was submitted to the grand jury with malice and without probable cause.

At the trial Sims testified : In November, 1886, I met with Taylor who had been talking to me about a sow and some pigs around my place. I had noticed four earlier in the year; when I saw him I knew of only two. I paid him $1 each for two, and was to pay the same for the other two if I got them. In the spring of 1887 I saw the hog in controversy, back of my field with my other hogs. It was a black sow, not marked. I felt satisfied it was one of the Taylor hogs, by its size, color and age, which I had bought, and I put it in my field. It was very wild, and could not be caught without a dog. About three weeks afterwards John Shiver had some hogs in this field; and when he went to mark his, I told him to mark this hog. I was at church the day this hog was marked by him. In September, 1887, Bell came and asked me if I had seen anything of his hogs; said they were all marked, and there were four. I told him I had not seen any such hogs as he described. The next week the constable came to me and said he had a warrant for a hog that Bell claimed, and he had found the hog in my field, and I would have to go to court. I went with him, saw Bell and asked him why he had acted so, and why he did not come to me when he found the hog in my field. I then asked him if he could swear positively to the hog, and he said he could. I told him I believed it to be the hog I bought from Taylor. I could not swear positively to any unmarked wild hog, and if he could do so I did not propose to have any contest over it. I tried to get him to pay the cost, but he refused. I paid the cost, and the matter was settled. Bad feeling was then and still is existing between Horn and myself.

Taylor testified in corroboration of the plaintiff as to the purchase of the hogs, except that he did not tell Sims they were sows or boars; did not know which they were.—Plaintiff's half-brother testified that he went

in the field and saw the hog; it was in the pasture; weeds and grass were in the field; the hog was running 75 or 80 yards when he saw it; it was a sow, he could tell that distance; it was wild or skittish, not gentle.—The solicitor-general testified: No prosecution is being carried on now against Sims about this hog. I remember well when this bill was presented to the grand jury. Horn came to me twice and said he wanted to prosecute Sims for stealing Bell's hog. I told him, if he would put his name down as prosecutor, I would write the bill; he said he would do it. I then wrote the bill and sent it before the grand jury. Horn's brother and Bell were not present either time.—The indictment was in evidence. It charged Sims with stealing a small black female hog on September 10, 1887, the property of Bell, unmarked; and was indorsed with the name of Horn as prosecutor, and with the words, " No bill, with malicious prosecution," signed by the foreman of the grand jury.

The testimony of Bell and of Horn and his brother was substantially as follows: Bell's black sow shoat was gone about three weeks. He met Sims, described the shoat to him, and asked him if he had seen it. He said no; then said he saw such a hog about three weeks before, between his field and the river. Bell was directed to look in Sims' field for the hog; did so, and found it; it was gentle; by calling it with a pet name Bell got it into a pen. It was in Sims' mark; was not well good where marked. Bell went to the justice and got the warrant of his own will and without any suggestion from anybody. Sims came to the court-ground and said he did not know if the hog was his or not. Bell told him it was his (Bell's), and he would swear to it. Sims gave it up and paid the cost. Bell went to the superior court to prosecute Sims for stealing the hog, without the solicitation or advice of anybody. On his way he was overtaken by Horn, and they talked about the hog case.

Bell said he did not know the solicitor-general, and for Horn to show him that officer. Horn did so, and Bell stated the case. The solicitor-general said it was a clear case of hog-stealing, but that, as Bell had compromised the matter and was a material witness, he would put Horn down as prosecutor. Horn objected; said it was none of his business. The solicitor-general said it was a mere matter of form, and some one should be prosecutor. Horn said, if that was all, he might put him down as prosecutor; otherwise not. Horn's brother also was present at this conversation. There was no good feeling between Sims and Horn; they came near having a difficulty once. The possessory warrant was in evidence.

W. C. McCALL and W. S. HUMPHREYS, for plaintiff in error. E. P. S. DENMARK, by D. W. ROUNTREE, *contra.*