28771. HESTER *et al. v.* SHROUDER.

DECIDED MARCH 21, 1941.

*Newton Gaskins, Parker & Parker,* for plaintiffs in error.
*Mingledorff & Roberts, E. O. Blalock,* contra.

STEPHENS, P. J. T. J. Shrouder instituted suit against G. W. Hester and National Surety Company to recover $3000 as damages arising out of certain alleged acts of Hester as sheriff of Jeff Davis County. The sheriff was sued on his official bond ($3000), for the principal and National Surety Company, his surety, was joined as a party defendant. The action was brought in two counts. It appeared from the allegations of the first count that a chattel mortgage fi. fa. was levied by the sheriff upon certain personal property, including growing crops in the field of the plaintiff, as the property of the plaintiff; that the hogs of the plaintiff were allowed by the plaintiff to get into the field and to destroy the crops so levied on, that because of this the sheriff became incensed and obtained, upon his affidavit before a justice of the peace, a warrant charging the plaintiff with "misdemeanor contempt of court;" that the sheriff arrested the plaintiff under this warrant and lodged him in jail; that the sheriff was "grossly careless and negligent" in so arresting and confining the plaintiff; that the sheriff placed the plaintiff in a city jail in a cell with a negro man, which jail and cell were unsanitary; that the arrest and confinement of the plaintiff were without probable cause and maliciously done; and that the charge against the plaintiff had terminated favorably to him by reason of the return by the grand jury of a "no bill" against him. The plaintiff alleged that the conduct of the sheriff caused him to be deprived of his liberty, and humiliated and embarrassed him, and that such conduct held the plaintiff "up to the world for scorn and ridicule," and the plaintiff's health has thereby been impaired, his nervous system shocked, and his general health undermined.

It appeared from the allegation of the second count that the sheriff illegally levied the fi. fa. upon unmatured growing crops

belonging to the plaintiff of the value of $3030; that after he levied thereon the sheriff wilfully failed to take care of and harvest these crops, and permitted them to rot in the field; that the loss of these crops was due "solely and wholly to the levy by the defendant upon such unmatured, growing crops," and his failure to take care of them after the levy, and that by reason thereof the plaintiff has been injured and damaged in the sum sued for. The defendants filed an answer in which, after admitting the formal parts of the petition, they denied generally the allegations thereof and that they were liable as claimed.

On the trial the plaintiff introduced evidence which tended substantially to support the allegations of the petition. The jury were authorized to find that the fences around the field in which the crops levied on were growing were in a state of "disrepair" and insufficient to keep hogs from entering and injuring the crops; that hogs and cattle continuously got into the field before the levy of the fi. fa.; that the plaintiff informed the sheriff at the time of the levy that he had nothing with which to feed his hogs except that which was taken from his field, and that he requested permission of the sheriff to get feed for his hogs from the field, which the sheriff refused to permit; that he informed the sheriff thereafter that there was nothing for him to do but turn his hogs out into the woods; that he told the sheriff the fences around the field were in such a bad condition the hogs would then get into the field; that the plaintiff turned the hogs out and they got into the field; that the fences were insufficient to keep the hogs out; that the entire crop of the plaintiff was permitted to rot in the field, and he did not realize anything therefrom; and that when the sheriff came to arrest him under the warrant the sheriff cursed and abused him. The plaintiff further testified that after he was arrested the sheriff stated that he "was going to railroad us sorry fellows to the chain gang."

It further appeared from the evidence that some one reported to the sheriff that the hogs were in the field, and the sheriff thereupon informed the plaintiff that something would have to be done about the hogs getting in the field, as they could not be permitted to eat and destroy the crops levied on; that the sheriff requested the plaintiff to drive the hogs out and fix the fences, and that the plaintiff informed the sheriff that he objected to the fences being fixed or the hogs being put out, and also that his lawyer had told him to

run the hogs in the field. One Alexander, a tenant on the premises under the plaintiff, and who was having difficulty with the plaintiff and the wife of the plaintiff, testified that some one would tear the fences down as fast as he and others could fix them; that he had reported to the sheriff two or three times about being unable to keep the hogs out, and that the sheriff came out to see the plaintiff about once or twice before the arrest was made. The sheriff testified that the hogs were eating up the crops, and that the plaintiff in the mortgage foreclosure proceedings was complaining to him about it; that he made three trips out to the plaintiff's farm, which was 18 miles from the county site, to see about the hogs, and that the plaintiff told him he was following the advice of his lawyer that he "could tear the fences from around that field and let the hogs eat up that crop," and he was going to do it. The sheriff further testified: "I thought as custodian of that property it was my duty to protect it, to arrest him [the plaintiff] and stop him from letting those hogs get into the field was the only choice I had; I know they were on my neck and sue my bond. I did all I could as an officer to carry out the law; am under oath, in every respect. . . I swore out a warrant when I arrested Mr. Shrouder, swore out a warrant for tearing down the fences and letting the hogs in." It appeared from the testimony of the sheriff that he arrested the plaintiff to protect the crop. The plaintiff testified that the sheriff told him he was arresting him about those hogs eating that crop up. The sheriff testified: "All I know, I knew under my bond I had to protect that crop because it was turned over to me." It appeared from the evidence that Jeff Davis County, the county in which the field was located, was not a "no-fence law county," and therefore that stock were permitted to run at large, it being incumbent on the people to fence their fields, but not to keep their stock pastures enclosed by fences. It appeared from the testimony of the plaintiff that at the time "the sheriff levied on this crop, he was levying on growing, unmatured crops in the field, it was all unmatured except about 1000 pounds of tobacco."

The trial resulted in a verdict for the plaintiff for $2350. The defendants made a motion for new trial upon the general grounds and by amendment added three certain special grounds as will appear hereinafter in this opinion.

It is urged by the defendants that a new trial should be granted

on the general grounds for the reason that the plaintiff failed to prove a "criminal prosecution," that is, that he was arrested and prosecuted under a warrant charging the violation of a penal statute; that the evidence failed to show that the alleged criminal prosecution of the plaintiff was "maliciously carried on," and that the plaintiff failed to prove that the alleged prosecution was "without any probable cause." Whether or not the warrant obtained by the sheriff and under which the arrest of the plaintiff was made was a legal warrant is immaterial. The allegations in the first count of the petition are sufficient to allege either a malicious prosecution carried on by the defendant, or a false imprisonment by the defendant, dependent upon whether the warrant was legal or illegal. There being no demurrer on the ground of a misjoinder or for duplicity, a verdict would be sustained upon either theory. The evidence would authorize a verdict for the plaintiff, irrespective of the validity or invalidity of the warrant, if it was sufficient to authorize a finding that the defendant was arrested and lodged in jail and restrained of his liberty as alleged, that the prosecution arising from the issuance of the warrant and the arrest thereunder was carried on maliciously and without probable cause, and that the prosecution had terminated favorably to the plaintiff. The evidence was sufficient to authorize a finding that the defendant instigated the prosecution by causing the warrant for plaintiff's arrest to be issued, that the prosecution was carried on without probable cause to suspect the plaintiff's guilt of a crime, that it was done so by the defendant maliciously, and that the prosecution had terminated favorably to the plaintiff.

It appears from the evidence that the crop levied on by the sheriff, with the exception of the tobacco which was a separate and distinct crop from the rest of the crop levied on, was an unmatured crop. The levy, being on unmatured crop, was illegal, and the crop was not in the legal custody and control of the sheriff. Code, §§ 39-119, 85-1903. It is not contended that the hogs ate the tobacco, but, if they ate any of the crop, it was the crop that was illegally levied on. Therefore the alleged acts of the plaintiff in turning his hogs in upon the crop were in no wise criminal in character and constituted no element of any crime. The defendant therefore had no probable cause for arresting and prosecuting the plaintiff. The jury therefore were authorized to find that the prosecution of the plain-

tiff was carried on by the defendant sheriff without probable cause. While malice can be inferred in a prosecution carried on without probable cause, the jury were further authorized to infer from the evidence that the prosecution was carried on maliciously. There is evidence to the effect that when the defendant arrested the plaintiff he cursed the plaintiff, and said he would "railroad" the plaintiff and others to the chain gang. From this, and other portions of the evidence not necessary to narrate which demonstrate the complexion of the case, the jury were authorized to find that the defendant carried on the prosecution maliciously. It appears from the evidence that the plaintiff, after having been arrested and lodged in jail by the defendant, was released, and no further efforts were made towards the prosecution of the plaintiff on the charges made by the defendant. The jury were authorized to find that the prosecution had terminated. There appears in evidence an indictment against the plaintiff for malicious mischief in permitting his hogs to eat and destroy certain crops of one Alexander. Alexander was plaintiff's sub-tenant, with whom the sheriff left in custody the crops of the plaintiff upon which he had levied. If this indictment could be considered as the carrying on by the defendant of this prosecution against the plaintiff, it could be inferred that the prosecution terminated when the grand jury found a "no bill" upon this indictment. "In a suit for malicious prosecution, proof that the grand jury returned 'no bill' on the indictment, is sufficient proof, prima facie, of the termination of the prosecution." *Woodruff* v. *Woodruff*, 22 *Ga.* 237 ; *Horn* v. *Sims*, 92 *Ga.* 421 (17 S. E. 670).

The evidence was sufficient to authorize a finding that the defendant arrested the plaintiff and restrained him of his liberty for a period of time by incarcerating him in jail, and that the only authority for the arrest and imprisonment was the warrant above referred to which the defendant sheriff had caused to be issued for the plaintiff's arrest. This warrant charged the plaintiff with a "misdemeanor contempt of court." If the warrant was a valid one, in that it charged a misdemeanor, which is a crime (see *Williams* v. *State,* 107 *Ga.* 693, 33 S. E. 641), and the expression "contempt of court" was mere surplusage, the jury would have been authorized to find that the defendant was guilty of a malicious prosecution of the plaintiff. If the warrant was illegal in that it was issued, not for the commission of any crime, but for a "contempt of court,"

the arrest and imprisonment thereunder were illegal. Under either theory the verdict for the plaintiff was authorized. See *Elrod* v. *Anchor Duck Mills,* 50 *Ga. App.* 531, 534 (179 S. E. 188).

In the second count of the petition the plaintiff sued for damages to the crops levied on by the sheriff arising out of his alleged negligence in failing to properly protect and preserve the crops after having levied on them. It is contended by the defendants that there was no proof of the amount of damages sustained by the plaintiff on account of the alleged destruction of his crops. Since the jury was authorized to find damages, growing out of the act of the sheriff in arresting, prosecuting, and incarcerating the plaintiff in jail, whether maliciously and without probable cause or illegally, with attendant inconveniences and humiliation, and since there was evidence from which the jury could infer that the crops, after having been levied on by the defendant sheriff, were, by his negligent failure to protect and preserve them, damaged in the amount of $2800, the verdict for $2350 was not without evidence to support it.

In the first amended ground of the motion for new trial the defendants assign as error the charge of the court relatively to the contentions of the parties, in that in instructing the jury as to the contentions of the plaintiff the court went into detail, and stated fully the plaintiff's contentions in the language used by the plaintiff in the petition, while in immediate connection therewith in instructing the jury as to the defendants' contentions the court merely stated that the defendants had "by plea and answer filed a general denial of all the contentions made by the plaintiff in his declaration." The defendants contend that the charge on this subject unduly stressed and emphasized the contentions of the plaintiff, and did not with "equal explicitness present the contentions of the defendants." The judge stated to the jury the contentions of the plaintiff as made by the petition, and then instructed the jury that the defendants had "filed a general denial of all contentions made by the plaintiff in his declaration." The defendants did not interpose any affirmative or special or particular defenses to the action, but filed only a general denial of the allegations of the petition. These instructions were not error for the reason that they omitted to submit the substantial contentions of the defendants "made by their denial of plaintiff's petition and by the evidence, to the effect that the defendant, G. W. Hester, as sheriff, had probable cause for

arresting the plaintiff." Furthermore, no request was made for more explicit instructions on the contentions of the defendants. See *Southern Ry. Co.* v. *Autry,* 36 *Ga. App.* 552 (137 S. E. 414) ; *Greenfield* v. *Rhodes,* 21 *Ga. App.* 676 (94 S. E. 1036) ; *Atlanta Consolidated St. Ry. Co.* v. *Bagwell,* 107 *Ga.* 157 (33 S. E. 191) ; *American Surety Co.* v. *Smith,* 55 *Ga. App.* 633 (191 S. E. 137).

There is no merit in the second ground that the court erred in charging the jury on the measure of damages. The court charged as follows: "If, under the evidence and the foregoing instructions, you should find for the plaintiff upon this feature of the case, then in estimating his damages you may take into consideration any injury which he has suffered in his health, if any has been shown; also any physical and mental distress and suffering which he endured, if any has been shown, and you may further take into consideration any sense of shame, humiliation, or anguish of mind he had suffered, if any has been shown, by reason of such prosecution, if any, and you may assess such sum of damages as you may find under the evidence will fully compensate him for the injuries he has sustained, if any. Gentlemen, damages to feeling, health, social standing, there is no rule of law the court can give you to go by in determining such damages, should you find for the plaintiff, except that you will be guided by your enlightened consciences as impartial jurors." The plaintiff did not seek any special damages for permanent injury to his health thereby impairing his earning capacity. He alleged only that his health had been impaired, and that he had suffered ill effects to his health from the alleged wrong of the sheriff, as illustrating his general damages. See *Atlanta, Knoxville & Northern Railway Co.* v. *Gardner,* 122 *Ga.* 82, 86 (49 S. E. 818) ; *Standard Oil Co.* v. *Parish,* 40 *Ga. App.* 814 (151 S. E. 541). No more specific charge than that given by the court was requested by the defendants on this subject. In determining the amount of general damages to be awarded the jury could properly consider the fact that the plaintiff had sustained permanent injury to his health. See *Southern Railway Co.* v. *Ray,* 155 *Ga.* 579 (118 S. E. 53) ; *Mayor &c. of Americus* v. *Gammage,* 15 *Ga. App.* 805 (84 S. E. 144).

In the third amended ground error is assigned on the refusal of the court to permit a witness for the defendants, who was clerk of the grand jury which returned the no bill above referred to, to tes-

tify as to certain matters moving the grand jury to return the no bill. Such testimony was irrelevant and immaterial. The alleged no bill could have been relevant only for the purpose of showing that the prosecution had terminated favorably to the plaintiff, and the motives of the grand jurors in finding a no bill were immaterial.

The verdict was authorized by the evidence. None of the special grounds of the motion for new trial shows error.

*Judgment affirmed. Sutton, J., concurs in the judgment. Felton, J., concurs.*

STEPHENS, P. J., concurring specially. In addition to the above, speaking for myself alone: There is no evidence to authorize any inference that the plaintiff committed any crime. The plaintiff was in lawful possession of the land as tenant upon which the crops levied on were growing, and had the right to the use of the land as such tenant. He had a right under the law, as it prevailed in that county, to turn his hogs out to publicly graze, and was under no duty to fence his own fields or to keep the fences in repair against the intrusion of his own stock. He had a right to turn his hogs out, even though he knew they would go into the field where the crops were on which the defendant had levied. It does not appear that the crops, after the levy had been made, were left in the plaintiff's custody or care by the sheriff. The crops had been levied on by the sheriff, and it was incumbent on him to preserve and care for them. The plaintiff had committed no act which was an element of a crime. If he had turned his hogs out as claimed, which he had a right to do, and if he had made any openings in the fence surrounding the plaintiff's field, which the sheriff had closed to prevent the entry of the hogs, he committed no act which constituted any element of a crime. The alleged acts attributed to the plaintiff were not criminal as respects the statute penalizing the wrongful sale or disposition of mortgaged property (Code, § 67-9901), or as respects the statute against malicious mischief (Code, § 26-8116), or as respects the statute against obstructing legal process (Code, § 26-4401), or pulling down or removing any fence or enclosure of another without his consent (Code, § 26-3001 (3)), or as respects any other criminal statute.

The plaintiff's alleged acts could possibly fall only under "otherwise disposing" of mortgaged property (Code, § 67-9901), or "other acts of wilful and malicious mischief, in injuring or destroying any

other public or private property not herein enumerated" (Code, § 26-8116). The disposition of mortgaged property, which is made criminal, consists in disposition in the nature of a sale of the property. *Conley* v. *State,* 85 *Ga.* 348 (11) (11 S. E. 659); *Stenson* v. *State,* 43 *Ga. App.* 582 (159 S. E. 777). In the latter case it was held that killing and eating a hog by a mortgagor is not a disposition of mortgaged property in the sense of the statute which penalizes a disposition of mortgaged property. Certainly, the eating of the mortgaged property by the mortgagor's hogs, even if with the mortgagor's consent and procurement, is not a violation by the mortgagor of the statute penalizing the disposition of mortgaged property. Malicious mischief as respects any act against property, as constituting a crime, must be against the property of another, and must be wilful and malicious. The statute says "wilful" and "malicious." Code, § 26-8116. This contemplates some wilful and malicious act by the person himself. It certainly does not contemplate an involuntary or negative act such as that of turning out the hogs to graze publicly under a right so to do, or making an opening in one's own fence, although he may know that his hogs will get into the field and eat the crop, and he expects them to do so.